UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

HENRY OGBUOKIRI,

Defendant.

20 Cr. 3-4 (KPF)

**ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Defendant Henry Ogbuokiri, who is currently housed at the Federal
Correctional Institution in Fairton, New Jersey ("FCI Fairton"), has moved for
compassionate release, in the form of a reduction in sentence to time served,
pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and in the alternative for a reduction in
sentence pursuant to 18 U.S.C. § 3582(c)(2).  In support of the former, Mr.
Ogbuokiri cites the conditions of his confinement, certain medical conditions,
the COVID-19 pandemic, his efforts at rehabilitation, alleged sentencing
disparities, and family circumstances; in support of the latter, he cites to 2023
amendments to the United States Sentencing Guidelines ("U.S.S.G." or the
"Guidelines") that were made retroactive by the United States Sentencing
Commission (the "Sentencing Commission").  The Government opposes both
motions.  As set forth in the remainder of this Order, the Court denies Mr.
Ogbuokiri's motions.

# BACKGROUND[1]

From late 2018 through the fall of 2019, Henry Ogbuokiri was part of a sprawling conspiracy to steal and launder millions of dollars using bank accounts opened with fraudulent information.  As charged by the Government in Indictment No. 20 Cr. 3 (KPF) (the "Indictment"), the conspiracy had three basic components.  *First*, members of the conspiracy opened business bank accounts, typically in the names of corporate entities and typically using fake identification documents and/or personal identifying information of other (real) people.  *Second*, members of the conspiracy used those accounts to receive the proceeds of fraudulent schemes, either by depositing stolen or forged checks into the account, or by fraudulently inducing victims to wire money into the accounts.  *Third*, members of the conspiracy accessed the fraudulently obtained funds by withdrawing money from the accounts that received the fraudulently obtained funds, or by transferring the ill-gotten gains to other bank accounts and then withdrawing the money from those accounts.  (*See* Final Presentence Investigation Report ("PSR" (Dkt. #329)) ¶¶ 22-24).

Mr. Ogbuokiri's roles in the conspiracy included opening bank accounts, depositing counterfeit and stolen checks, moving money between accounts, and working with others who performed similar functions.  (PSR ¶ 25; *see also* Gov't Opp. 2-3 (outlining specific transactions conducted by Mr. Ogbuokiri

---

[1]	For ease of reference, the Court refers to Mr. Ogbuokiri's memorandum in support of his motions for a reduction in sentence as "Def. Br." (Dkt. #493), and uses the pagination imposed by the Court's Electronic Case Filing ("ECF") system.  The Court refers to the Government's submission in opposition as "Gov't Opp." (Dkt. #497), and to Mr. Ogbuokiri's reply submission as "Def. Reply" (Dkt. #503).

between December 2018 and July 2019 in furtherance of the conspiracy)). In that regard, Mr. Ogbuokiri worked closely with co-defendant Oladayo Oladokun, whom the Court understands from presiding over this case for more than four years to have been a (if not *the*) leader of the charged conspiracy. According to the Government, Mr. Ogbuokiri was himself responsible for an intended loss amount of $3,474,480.70 and an actual loss amount of $694,882.35.  (PSR ¶ 34).

On November 27, 2019, Mr. Ogbuokiri and fourteen co-defendants were charged in a criminal complaint; Mr. Ogbuokiri was charged with conspiring to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349; conspiring to commit money laundering, in violation of 18 U.S.C. § 1956; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  (Dkt. #1).  Mr. Ogbuokiri voluntarily surrendered to law enforcement on December 16, 2019, and on January 2, 2020, a grand jury returned the Indictment charging him with the same offenses charged in the complaint.  (Dkt. #21 (minute entry for presentment), 39 (indictment)).

On May 19, 2021, Mr. Ogbuokiri pleaded guilty pursuant to a written plea agreement with the Government to Count One of the Indictment.[2]  (*See* Minute Entry for May 19, 2021; Dkt. #197 (transcript of plea proceeding)).[3]  In

---

[2]    In so doing, Mr. Ogbuokiri avoided a two-year mandatory consecutive sentence on Count Three.

[3]    In light of (i) concerns about the ongoing COVID-19 pandemic and (ii) Mr. Ogbuokiri's residence in Maryland, the plea proceeding took place by videoconference with the consent of the parties.  (Dkt. #197 at 3-6).

the plea agreement, the Government presented its then-current understanding of the application of the Guidelines to Mr. Ogbuokiri's case; it calculated the relevant range to be 41 to 51 months' imprisonment.  (Dkt. #197 at 28-29).  As potentially relevant here, Mr. Ogbuokiri's criminal history category was determined to be III, in part because of the assessment of two criminal history points for committing the instant conduct while serving a suspended sentence and a term of probation.  (PSR ¶ 68).  In his allocution, Mr. Ogbuokiri admitted that "[f]rom April 2018, up until September 2019, in [the] Southern District of New York, I worked with others, known and unknown, in order to open accounts, deposit checks that were not in my name, and withdraw from banks, using ATMs and false accounts not in my name[.]"  (Dkt. #197 at 32).  At the end of the proceeding, the Court accepted Mr. Ogbuokiri's guilty plea.  (*Id.* at 38-39).

Sentencing for Mr. Ogbuokiri took place on January 18, 2023; the delay was a product of many factors, including the COVID-19 pandemic.  (*See* Dkt. #433 (sentencing transcript); Dkt. #423 (judgment)).  Mr. Ogbuokiri sought a sentence of imprisonment of one year and one day.  (Dkt. #412 at 1-2).  The Government, however, sought a sentence of imprisonment of 51 months — the top of the then-applicable Guidelines range — because "[a]fter Ogbuokiri pled guilty, the Government learned that Ogbuokiri flagrantly violated the terms of his supervised release between December 2019 and June 2020 by continuing to engage in the charged conspiracy."  (Dkt. #414 at 1; *see also id.* at 4).  In particular, while preparing for the trial of Mr. Oladokun, the Government

learned that Mr. Ogbuokiri had not only communicated with Mr. Oladokun (while the former was on pretrial release and the latter had not yet been arrested), but had in fact

> exchanged hundreds of messages, during which they exchanged personal identifying information belonging to other people; exchanged photographs of what appear to be fake driver's licenses and photographs used on those fake licenses (fake licenses are sometimes referred to as "faces" in the chats); discussed opening bank accounts, which they often referred to as "houses"; and discussed receiving and depositing checks (each of which they often called a "leaf") and wire transfers. In short, Ogbuokiri continued working with Oladokun while on pretrial release, doing the same thing as before his arrest.

(Dkt. #414 at 4-5). The Government also noted that prior experiences with the criminal justice system, including a prior conviction for fraud-related conduct, had not deterred Mr. Ogbuokiri from criminal activity. (*Id.* at 7).

During the sentencing proceeding, the Court asked Mr. Ogbuokiri's counsel to respond to the Government's assertions of misconduct while on bail. (*See* Dkt. #433 at 5). Initially, defense counsel "disput[ed] ... wholeheartedly" that the individual communicating with Mr. Oladokun was Mr. Ogbuokiri. (*Id.* at 22-23; *see also id.* at 23 ("I've spoken with my client about it, and my client has insisted, 'That's not me.'"); *id.* at 29 ("And just for the purposes of transparency, after speaking with my client, he has made it very clear to me that it is not him[.]")). Counsel experienced some difficulty, however, in explaining how an email that had been sent to Mr. Ogbuokiri from his defense counsel had been included in the communications with Mr. Oladokun. (*Id.* at 23-29). The Court recessed the proceedings, so that the parties could discuss

5

whether a *Fatico* hearing would be necessary. (*Id.* at 31). When the parties returned, defense counsel announced that Mr. Ogbuokiri had withdrawn his application for a *Fatico* hearing, and that he no longer contested the Government's factual proffer about his post-arrest involvement in fraudulent activity. (*Id.* at 31-34).

After counsel for each side was given an opportunity to make an oral sentencing presentation, Mr. Ogbuokiri spoke to the Court, during which he discussed how his life had changed since his initial arrest and how he wanted to move on after a prosecution that had spanned nearly three years. (Dkt. #433 at 39). After taking a recess to consider the parties' arguments, the Court then imposed sentence:

> As I mentioned, I did accept the guidelines calculations in this case, but there were two other issues raised by the government that I thought about in connection with sentencing. One was the nature of Mr. Ogbuokiri's involvement in the case, and in particular the argument that it was of a longer duration and broader in scope than that of other defendants I've seen in this case, and based on the statements in the presentence investigation report that have not been contested by the defense, and based on my own knowledge from presiding over this case for the past three years, I do agree that his involvement, Mr. Ogbuokiri's involvement was longer and deeper than many of the other defendants in the case, and that places him among the most culpable of the defendants in the case, from my perspective.
>
> The second issue is the involvement of Mr. Ogbuokiri in the potential identity theft or in discussions with co-defendant Mr. Oladokun after his arrest in this case. I accept the government's factual proffer in this regard and I recognize that it's not disputed by the defense. And so I accept that that is another factor for me to consider.

6

… It is not fully clear to me, however, that Mr. Ogbuokiri has fully accepted responsibility in this case or that he will be deterred in the future, or that he understands the seriousness of the conduct that brings him here today. This is not, as he may have thought at one point, a crime without victims. And while I appreciate how his criminal history may have impacted his job search, it was not an excuse then —- and it's not an excuse now —- that he engaged in the conduct because of difficulties with employment.

So in imposing this sentence, I have sought to balance what I believe to be the seriousness of Mr. Ogbuokiri's criminal conduct and his criminal history and the need for deterrence with the fact that he has, to a degree, accepted responsibility by not putting the government to the burden of a *Fatico* hearing. And I've also considered certain issues in his childhood, including educational experiences he has had and some difficulties he's had — he had with his father, and I've considered as well the sentences that I have imposed on others in this case.

And so I've decided to impose a sentence at the bottom of the applicable guidelines range in the amount of 41 months' imprisonment. I recognize the government's argument, but I don't believe that the purposes of sentencing are better vindicated or significantly vindicated by imposing a sentence at the higher end of the range.

(Dkt. #433 at 43-45). Mr. Ogbuokiri was permitted to remain on bail and to surrender to his designated facility in April 2023. (Dkt. #423 at 2).

After surrendering to begin his sentence, Mr. Ogbuokiri filed a *pro se* motion under 18 U.S.C. § 3582(c) that was received by the Court on December 5, 2023. (Dkt. #493; *see also* Dkt. #495 (scheduling order)). The Government filed its opposition submission on February 1, 2024, which submission included sealed copies of Mr. Ogbuokiri's medical records from the

7

Bureau of Prisons (the "BOP").  (Dkt. #497).  Mr. Ogbuokiri filed his reply submission on February 27, 2024.  (Dkt. #503).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order).  The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]."  *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  But there are three requirements that must be satisfied before a court can grant such relief.  First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by

requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement).  Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)].  Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence.  These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022).  The district court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence.  *See Brooker*, 976 F.3d at 237.

In Amendment 821, effective as of November 1, 2023 and later made retroactive, the Sentencing Commission amended the policy statement

contained at U.S.S.G. § 1B1.13 in order to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguished from BOP-initiated) compassionate release requests.  This amendment "now controls the analysis of a compassionate release motion, however initiated."  *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

As relevant here, courts may consider the medical circumstances of a defendant, including whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, U.S.S.G. § 1B1.13(b)(1)(C); or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner."  *Id.* § 1B1.13(b)(1)(D).  The amended policy statement also recognizes that family circumstances may constitute extraordinary and compelling reasons, as, for example, where the defendant is the "only available caregiver" for an immediate family member.  *See id.* § 1B1.13(b)(3).

The "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant."  *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020).  Even if a court finds that

a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i).  "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

## DISCUSSION

### A.   The Court Denies Mr. Ogbuokiri's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

In opposing Mr. Ogbuokiri's compassionate release motion, the Government first contends that Mr. Ogbuokiri has not exhausted his administrative remedies with respect to all of his claims for relief.  (*See* Gov't Opp. 3, 5).  On this point, the Government observes that Mr. Ogbuokiri only argued to the Warden of his facility that he was needed to care for his daughter.  (*Id.* at 5).  Mr. Ogbuokiri's additional arguments to this Court — which concern conditions at the facility, his medical care, the COVID-19 virus, his rehabilitation, and alleged sentencing disparities — are qualitatively different and were not administratively exhausted.  The Government is correct, and it is thus proper for the Court to reject these additional arguments on the basis of failure to exhaust alone.  *See United States* v. *Scparta*, 567 F. Supp. 3d 416, 421 (S.D.N.Y. 2020) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies.").

11

However, even overlooking the exhaustion requirement and considering the merits of all of Mr. Ogbuokiri's claims, the Court denies his § 3582(c)(1)(A)(i) motion because Mr. Ogbuokiri has failed to identify "extraordinary and compelling reasons" warranting his release.  Mr. Ogbuokiri begins by decrying certain conditions at FCI Loretto, the facility at which he was incarcerated at the time he filed his motion.  (*See, e.g.*, Def. Br. 8-16 (discussing deficiencies in housing, clothing, and programming)).  As an initial matter, Mr. Ogbuokiri was subsequently transferred to FCI Fairton, about which he has not raised similar complaints.  More fundamentally, however, general prison conditions experienced by all inmates, while at times difficult, do not qualify as extraordinary and compelling reasons under § 3582(c)(1)(A)(i). *See United States* v. *Webb*, No. 12 Cr. 111-7 (CS), 2023 WL 9022874, at *2 (S.D.N.Y. Dec. 29, 2023) ("[W]hile I do not doubt that conditions in prison are difficult and unpleasant, any such conditions are not unique to Defendant. Such universal conditions do not give rise to extraordinary and compelling circumstances." (collecting cases)); *accord United States* v. *Santana*, No. 12 Cr. 790 (PAE), 2023 WL 2625790, at *4 (S.D.N.Y. Mar. 24, 2023).

Mr. Ogbuokiri next argues that his medical issues, which include angina and potentially other conditions,[4] qualify as extraordinary and compelling.

---

[4]    The Court uses the qualifier "potentially" because Mr. Ogbuokiri argues that certain lab results *suggest* other conditions, such as kidney, liver, or blood ailments.  (Def. Br. 17-18).  However, none of the conditions proffered by Mr. Ogbuokiri in this section has been diagnosed, and the Court will not predicate compassionate release on mere speculation.  What is more, as the Government notes (*see* Gov't Opp. 6-7), none of the lab test results reflected a reading or level in the "critical" category.

(Def. Br. 15-17). It is true that the Sentencing Commission has recognized that medical issues can qualify as extraordinary and compelling where, for example, the circumstances involve a "serious" or "deteriorating" physical or mental condition that "substantially diminishes the ability of the defendant to provide self-care" within the facility, as well as conditions that require "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1). Mr. Ogbuokiri has not demonstrated that his angina is a sufficiently serious condition, nor has he demonstrated that he is not receiving proper medical care for it. To the contrary, the Court has reviewed with care Mr. Ogbuokiri's medical records produced by the BOP, which records confirm that he has received timely and appropriate care for any medical issues that he has disclosed.

Relatedly, Mr. Ogbuokiri claims that the evolving COVID-19 virus presents a serious risk to inmates who "are older and have serious chronic health problems," even inmates who are vaccinated. (Def. Br. 19).[5] As noted above, the Sentencing Commission has recognized circumstances in which a public health emergency can present an extraordinary and compelling reason

---

[5]     The Court notes that Mr. Ogbuokiri has refused the COVID-19 vaccine, which greatly lessens the force of his arguments. To borrow from a sister court in this District, "[i]nsofar as [Mr. Ogbuokiri] is unable to claim any risk from COVID-19 not faced by the rest of the populace, and is unwilling to take the single step — vaccination — that would most stand to reduce a person's risks from COVID-19, [Mr. Ogbuokiri], under the assembled case law, cannot claim to face 'extraordinary and compelling' circumstances." *United States* v. *Fernandez*, No. 13 Cr. 20 (PAE), 2023 WL 2584197, at *3 (S.D.N.Y. Mar. 21, 2023) (collecting cases), *cited in United States* v. *Otero*, No. 15 Cr. 608-10 (KPF), 2023 WL 2674745, at *9 (S.D.N.Y. Mar. 29, 2023).

under § 3582(c)(1)(A)(i), but even there a defendant must demonstrate that the facility is at "imminent risk" of being affected by "an outbreak of infectious disease" or an "ongoing public health emergency"; that the defendant is at an "increased risk of suffering severe medical complications or death" due to "personal health factors and custodial status"; and that "such risk cannot be adequately mitigated in a timely manner." *See* U.S.S.G. § 1B1.13(b)(D).

At present, there is no outbreak of COVID-19 at FCI Fairton. To the contrary, 667 inmates of a total population of 824 are fully inoculated, and the facility recites no open cases at this time. *See* BOP, *Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed June 14, 2024). Similarly, there is nothing about Mr. Ogbuokiri's age (37) or medical conditions that puts him at risk of experiencing severe illness or death were he to contract COVID-19. *See* Centers for Disease Control and Prevention ("CDC"), *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 15, 2024). On balance, this Court concludes that the danger that Mr. Ogbuokiri faces from infection with COVID-19, even accounting for his proffered risk factors, does not alone or in combination with other factors amount to an extraordinary and compelling reason for granting compassionate release.

Moving from negative to positive arguments, Mr. Ogbuokiri notes that he has made a continual effort to improve himself while detained; that he has completed educational programming pursuant to the First Step Act; and that

14

he has "no incident reports and is considered to be a low/minimum risk of recidivism as determined by the people in the best position to evaluate him." (Def. Br. 24). The Court acknowledges that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), but that a court may consider rehabilitation in combination with other factors in determining whether there are extraordinary and compelling reasons for a sentence reduction, U.S.S.G. § 1B1.13(d). The Court commends Mr. Ogbuokiri for using his time productively while incarcerated. However, courts have generally found that participation in such programming is neither exceptional nor unusual. *See, e.g., United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *5 (S.D.N.Y. June 3, 2024) (collecting cases); *United States* v. *Frazier*, No. 17 Cr. 364-7 (CS), 2023 WL 2139520, at *1 (S.D.N.Y. Feb. 21, 2023) (same). This Court agrees, noting in particular the comparatively modest percentage of Mr. Ogbuokiri's sentence that was completed when he filed his motion.[6]

Mr. Ogbuokiri argues that disparities in sentences with defendants in cases involving violence amounts to an extraordinary and compelling circumstance. (Def. Br. 26-27). In support, he cites (i) sentences imposed on individuals who committed murder(s) and "received relatively light sentences, as compared to the Defendant and his charges," and (ii) defendants whose

---

[6]     One portion of Mr. Ogbuokiri's argument is also confusing, namely, his argument that "[i]n spite of being locked down during the entire C0VID-19 period, March 2020 through February 2023, the Defendant made a continual effort to improve himself." (Def. Br. 24). In point of fact, Mr. Ogbuokiri was on bail until in or about April 2023.

motion for compassionate release were granted despite having originally received life sentences. (*Id.*). As it happens, Mr. Ogbuokiri errs in arguing that he "has no criminal history" prior to his arrest on these charges, as he had two prior felony convictions. (PSR ¶¶ 65-66). Moreover, Mr. Ogbuokiri's 41-month sentence is hardly on par with the 15-year sentences of several of his proposed comparators. In any event, given the individualized nature of sentencing, it is not a surprise to the Court that different defendants convicted of different crimes receive different sentences. After decades of involvement in the criminal justice system in this District, this Court is aware of the wide variety among sentences. Significantly, however, this Court imposed the sentence that it believed to be appropriate on the facts of this case, and information about other sentences for other, violent crimes does nothing to cause the Court to doubt its sentence here. *See generally United States* v. *Fernandez*, No. 22-3122-cr, 2024 WL 2926825, at *5-6 (2d Cir. June 11, 2024) (discussing sentence disparities as a basis for compassionate release).

Finally, Mr. Ogbuokiri argues for compassionate release based on his family circumstances, specifically, his wife's difficulty in balancing employment and childcare obligations. (Def. Br. 30). "The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." *United States* v. *Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020); *see generally* U.S.S.G. § 1B1.13(b)(3)(A) (listing death or

16

incapacitation of caregiver of defendant's minor child as an extraordinary and compelling reason).  And while courts have granted compassionate release motions predicated on family circumstances, the evidence of the defendant's criticality to the preservation of the family unit in those cases is far more substantial than that presented here.  *See, e.g.*, *United States* v. *Messina*, No. 11 Cr. 31 (KAM), 2024 WL 2853119, at *6 (E.D.N.Y. June 4, 2024) (collecting and distinguishing cases in which motions were granted because of family circumstances).  Although the Court is sympathetic to Mr. Ogbuokiri's situation, the record before the Court establishes that he is not the only available caregiver for his child.  And while the burdens of employment and childcare are being shouldered by his wife, that is a factor common to many, if not most, families of incarcerated defendants.  *See United States* v. *Vailes*, No. 16 Cr. 297 (AMD), 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) ("There is no question that a defendant's incarceration is painful and burdensome to family members, who must bear the stress of managing their lives without the defendant's help.  It is an unfortunate fact, however, that these burdens are common to almost all families of incarcerated people, and do not constitute extraordinary or compelling factors.").

Ultimately, even were the Court to have found that one or more of Mr. Ogbuokiri's reasons amounted to "extraordinary and compelling," it would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a), which factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect

17

the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).  Despite a prior fraud-related conviction for which he received a lenient sentence, Mr. Ogbuokiri attempted for more than one year to defraud people of millions of dollars, and succeeded in defrauding people of nearly $700,000.  His involvement was so integral to the success of the conspiracy that he could not claim inadvertence or conscious avoidance. Even after his arrest, Mr. Ogbuokiri continued to engage in fraudulent conduct, and even after that conduct was discovered, he lied to this Court about his involvement.  On this record, there is no basis for compassionate release.

## B.    The Court Denies Mr. Ogbuokiri's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)

In the alternative, Mr. Ogbuokiri seeks a reduction in his sentence pursuant to Amendment 821 of the Guidelines.  (Def. Br. 28-29; Def. Reply). As noted, Amendment 821 amended the Guidelines in two respects:  Part A amended U.S.S.G. § 4A1.1, by reducing from two points to one point the upward adjustment for offenders who committed an offense while under any criminal sentence, and by limiting this adjustment to defendants who received seven or more criminal history points; it is sometimes referred to as the "status points" adjustment.  Part B, by contrast, amended U.S.S.G. § 4C1.1, by providing a two-level offense level reduction for offenders with zero criminal history points who meet specified eligibility criteria; it is sometimes referred to

18

as the "zero-point offender" adjustment.  The Sentencing Commission made

Amendment 821 retroactive effective November 1, 2023.

The Probation Office has determined that Mr. Ogbuokiri is eligible for a

two-point reduction in his criminal history points, which would put him in

Criminal History Category II, and would result in a Guidelines range of 37 to

46 months' imprisonment.  (Dkt. #496).  The Government acknowledges Mr.

Ogbuokiri's eligibility for a sentence reduction, but argues that the Court

should deny the motion based on its consideration of the § 3553(a) factors.

(Gov't Opp. 9-11).

Title 18, United States Code, Section 3582(c)(2) provides that

> in the case of a defendant who has been sentenced to a
> term of imprisonment based on a sentencing range that
> has subsequently been lowered by the Sentencing
> Commission pursuant to 28 U.S.C. 994(o), upon motion
> of the defendant or the Director of the Bureau of
> Prisons, or on its own motion, the court may reduce the
> term of imprisonment, after considering the factors set
> forth in section 3553(a) to the extent that they are
> applicable, if such a reduction is consistent with
> applicable policy statements issued by the Sentencing
> Commission.

18 U.S.C. § 3582(c)(2); *United States* v. *Martin*, 974 F.3d 124, 136, 139 (2d Cir.

2020).

When presented with a motion to reduce a sentence pursuant to

§ 3582(c)(2), a district court must first "determine the amended guideline range

that would have been applicable to the defendant if [the amendment] had been

in effect at the time the defendant was sentenced."  *United States* v. *Zapatero*,

961 F.3d 123, 127 (2d Cir. 2020) (quoting U.S.S.G. § 1B1.1Q(b)(1)); *see also*

*Dillon* v. *United States*, 560 U.S. 817, 827 (2010).  If the defendant is eligible for a sentence reduction, "a court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) and if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," which are contained in U.S.S.G. § 1B1.10.  *Martin*, 974 F.3d at 136 (citation omitted).  Even when a defendant is eligible for a reduction, "a sentencing court has discretion to deny a motion to reduce a sentence pursuant to § 3582(c)(2)."  *United States* v. *Brooks*, 891 F.3d 432, 436 (2d Cir. 2018) (addressing a denial to reduce a sentence pursuant to Amendment 782).

While acknowledging its ability to reduce Mr. Ogbuokiri's sentence, the Court declines to do so here, for largely the same reasons presented in the Court's earlier § 3553(a) analysis.  The Court understands the Sentencing Commission to have been concerned that "status points add little to the overall predictive value associated with the criminal history score."  U.S.S.G., Amendment 821, *Reason for Amendment.*  Here, however, the similarity in offenses and their temporal proximity were, and remain, significant concerns to this Court.  Mr. Ogbuokiri played a critical role in a sprawling conspiracy that resulted in extensive losses to victims.  Even after a prior conviction, and even after his arrest in this case, Mr. Ogbuokiri continued to engage in fraudulent conduct, and lied to the Court when questioned about it.  Finally, and as mentioned earlier, the Court imposed the sentence that it believed to be appropriate on the facts of the case; that sentence is in the middle of even the amended Guidelines range, and the Court sees no reason to change it.

Accordingly, Mr. Ogbuokiri's motion for a sentence reduction under § 3582(c)(2) is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Henry Ogbuokiri's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). The Clerk of Court is directed to terminate the motion at docket entry 493. The Clerk of Court is further directed to send a copy of this Order, along with the related Form AO 247 that is being docketed separately, to Mr. Ogbuokiri at his address of record.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   June 17, 2024
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

21